United States District Court
Southern District of Texas
**ENTERED**
January 02, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DUNG NGUYEN, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| VS. | § CIVIL ACTION NO. 4:24-CV-04505 |
| | § |
| STATE FARM MUTUAL AUTOMOBILE | § |
| INSURANCE COMPANY AND | § |
| INSURANCE AUTO AUCTIONS, INC., | § |
| | |
| *Defendants*. | |

## ORDER

Pending before this Court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Abatement of Extra-Contractual Causes of Action and for Separate Trials (Doc. No. 15). Plaintiff Dung Nguyen ("Plaintiff" or "Nguyen") filed a response in opposition. (Doc. No. 17). Upon consideration of the pleadings, responses, and relevant legal standards, the Court hereby denies State Farm's Motion for Abatement (Doc. No. 15).

### I. Factual Background

This case arises from an insurance dispute. In his Original Petition, Plaintiff alleges that while he was attending a car show in Harris County, Texas, his 2005 Bentley Continental GT was damaged. (Doc. No. 1-1 at 6). Plaintiff alleges that he reported the damage to his insurer, State Farm, and State Farm took possession, custody, and control over the vehicle. (*Id.*). While his vehicle was in State Farm's possession, Plaintiff alleges that State Farm brought his vehicle to Defendant Insurance Auto Auctions, Inc. ("IAA") for an inspection and adjustment of his

insurance claim. (*Id.*). At that time, Plaintiff alleges that "unknown individuals proceed[ed] to modify [his] car in an attempt to steal it." (*Id.*). Specifically, Plaintiff claims that the "car door jam [vehicle identification number] Plate was swapped with a donor car," "the window [vehicle identification number] Plate was swapped with a donor car," "the suspension [vehicle identification number] was removed," "the Engine [vehicle identification number] Plate was removed and ground down and hand etched with the donor car," "the car's [electronic control unit] was removed," and the "door sticker [vehicle identification number] was removed." (*Id.* at 7). Upon discovery of the purportedly stolen parts on his vehicle, Plaintiff alleged that he opened another claim with State Farm for a stolen vehicle. (*Id.*). State Farm denied the claim, asserting that the returned vehicle was the Plaintiff's vehicle. (*Id.*).

After State Farm denied his insurance claim for a stolen vehicle, Plaintiff filed his Original Petition in Texas state court in Harris County, Texas against State Farm and IAA. (Doc. No. 1-1 at 4). Shortly thereafter, IAA removed the case to this Court. (Doc. No. 1). His Original Petition, the live complaint in this case, pleads several different causes of action against both Defendants State Farm and IAA. Plaintiff alleges that State Farm breached the insurance agreement, violated the Texas Insurance Code, and breached the common law duty of good faith and fair dealing (*Id.* at 8–10). Plaintiff also alleges that both State Farm and IAA violated the Deceptive Trade Practices Act and are liable for breach of bailment, conversion, and negligence. (*Id.* at 11–13). State Farm filed this Motion for Abatement to sever the extra-contractual causes of action from Plaintiff's claim for breach of contract and abate the litigation of the extra-contractual causes of action.

2

## II. Legal Standards

Under Federal Rule of Civil Procedure 42(b), a court may order that claims be separately tried "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). The issue of whether separate trials are warranted in a diversity action is governed by federal law, not Texas law. *Houston McLane Co., Inc. v. Connecticut General Life Ins. Co.*, 2006 WL 3050812, at *1 (S.D. Tex. 2006). A district court has wide discretion to sever a claim against a party into separate cases. *See Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (5th Cir. 1995); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Courts consider the following five factors in determining whether to sever claims under Rule 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Gonzales v. Allstate Vehicle & Prop. Ins. Co.*, 2017 WL 7945689, at *2 (W.D. Tex. Sept. 14, 2017), *report and recommendation adopted*, 2017 WL 4678238 (W.D. Tex. Oct. 17, 2017).

## III. Analysis

State Farm asks this Court to sever Plaintiff's contractual and extra-contractual claims and, until the contractual claim reaches finality, to abate the Plaintiff's extra-contractual claims. (Doc. No. 15). State Farm argues that severing and abating is necessary because the contractual claim is dispositive, alleging that if the Court finds that Plaintiff cannot recover under his breach of contract claim, his extra-contractual claims must be denied. (*Id.*). State

3

Farm argues that severing the contractual and extra-contractual claims will avoid wasting time of the parties, the Court, and the jury. (*Id.*).

In response, Plaintiff argues that his contractual and extra-contractual claims are based on the same set of facts, and thus, severing the claims would not aid judicial efficiency. (Doc. No. 17). While Plaintiff admits that his contractual claim could be dispositive of his case, he argues that severing and abating would require the parties to reopen the discovery process and have an entirely separate trial on the extra-contractual claims if Plaintiff prevails on his breach of contract claim. (*Id.*). Plaintiff also emphasizes that State Farm has not presented any evidence that it would be prejudiced by litigating these claims together. (*Id.*). After reviewing the arguments and the relevant legal standards, the Court applies the *Gonzelez* five-factor analysis and denies State Farm's request.

First, at this point in the litigation, it is not clear whether Plaintiff's contractual claim would be dispositive of Plaintiff's extra-contractual claims. While it is generally true that "there can be no claim for bad faith when an insurer has promptly denied a claim that is not in fact covered," this does not preclude "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." *Jones v. Allstate Texas Lloyds*, 2017 WL 10129162, at *2 (E.D. Tex. Aug. 22, 2017); *Republic Ins. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Further, Plaintiff has alleged violations of the DTPA and Texas Insurance Code, including alleged misrepresentations, which may survive an adverse ruling on Plaintiff's contractual claims. *See Jones*, 2017 WL 10129162, at *2; *Vail v. Tex. Farm Bureau Mut. Ins.*, 754 S.W.2d 129, 136 (Tex. 1988) (stating that even an uninsured plaintiff may bring a claim for violations of the Texas Insurance Code); *USAA Tex.*

4

*Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752, at *4 (Tex. Apr. 7, 2017) ("An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties."). At this early stage, it is largely speculative as to whether Plaintiff's contractual claims could be dispositive of all of Plaintiff's extra-contractual claims. *See Eaglin v. Metro. Lloyds Ins. Co. of Tex.*, No. 4:15-CV-850, 2016 WL 7741730, at *2 (E.D. Tex. Apr. 28, 2016).

Second, State Farm's argument that severance and abatement would improve judicial economy is somewhat unpersuasive. If this Court were to grant State Farm's request and the Plaintiff prevails on his breach of contract claim, then the parties would have to reopen the discovery process for all of the extra-contractual claims. *Jones*, 2017 WL 10129162, at *2. Additionally, this Court would have to empanel another jury and hold another trial to reach finality on the extra-contractual claims, "causing unnecessary inconvenience to the members of the public chosen for that second jury panel." *Id.* Finally, the Court and the Parties would have to undertake the expense of preparing for a second trial. Such potential costs far outweigh any speculative savings from severance. *Id.* The Court finds that subsequent proceedings would be especially inefficient because both the contractual and extra-contractual claims appear to arise from the same set of facts. "It will be more expeditious and economical to prepare Plaintiff's contractual and extra-contractual claims concurrently." *Id.*

Lastly, the Court finds that State Farm did not present any evidence that litigating these claims together would cause any prejudice to State Farm or IAA. While State Farm cited some case law regarding the potential prejudice of evidence of a settlement offer, (Doc. No. 15), State Farm did not present evidence that any settlement offer exists in this case. Plaintiff

contends that there was no settlement offer. (Doc. No. 17). Without any evidence regarding "whether prejudice would be avoided if severance were granted," the Court denies State Farm's request. *Gonzales*, 2017 WL 7945689, at *2.

After weighing the five factors, the Court finds that State Farm failed to present a sufficient showing that this Court should sever and abate Plaintiff's extra-contractual claims. This Court denies the request.

## IV.   Conclusion

For the foregoing reasons, the Court denies State Farm's Motion for Abatement of Extra-Contractual Causes of Action and for Separate Trials (Doc. No. 15).

It is so ordered.

Signed on this the 2nd day of January 2026.

Andrew S. Hanen
United States District Judge